**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **SHAYMA ALZUBI**, | **Case No.: 4:26-cv-00838** |
| *Plaintiff,* | |
| **vs.** | **COMPLAINT AND JURY DEMAND** |
| **FORT WORTH INDEPENDENT SCHOOL DISTRICT**, | |
| *Defendant.* | |

## COMPLAINT

Plaintiff, SHAYMA ALZUBI, by and through undersigned counsel, brings this lawsuit under the First Amendment's Free Speech Clause and the Fourteenth Amendment's Equal Protection Clause, and states as follows:

### INTRODUCTION

1. On May 26, 2026, the Fort Worth Independent School District ("FWISD" or "District") gave in to an anti-Muslim, anti-Palestinian hysteria in violation of the Free Speech Clause of the First Amendment.

2. That day, per the demands of online hecklers, the school district removed Shayma Alzubi from her role as incoming principal of Western Hills High School. The school district even took down a four-day old social media announcement about promotion.

3. School officials made the decision to punish the incoming principal because some people online were upset.  But those people were upset not at what Shayma said

1

or how she said it. The online hecklers were upset that Plaintiff was Palestinian and Muslim.

4. The posts that generated this hysteria include, among other things, a picture at a Chili's near her college showing Ms. Alzubi standing next to her entry in the restaurant's coloring contest more than 15 years ago. The picture included text stating that "Jerusalem is the capital of Palestine," a view arising out of Ms. Alzubi's Palestinian national origin.

5. Another post is a picture of Ms. Alzubi with friends and a Palestine flag filter, also an expression of her national origin.

6. The posts for which FWISD has disciplined Ms. Alzubi include a reporter's politely-worded and factual explanation about the meaning of an Islamic term, *Sharia*, central to the personal practice of Ms. Alzubi's faith.

7. The posts also include run-of-the-mill political expressions used by dozens of teachers and other district staff, including Ms. Alzubi's use of the phrase "Black Lives Matter," a hashtag expressing support for DACA recipients, and a flyer supporting the school district's mask policies.

8. FWISD is disciplining Ms. Alzubi, not because she violated the district's social media policy; instead, the punishment was inflicted because of a hysteria manufactured by people who object to the school district promoting a Palestinian Muslim to be principal.

9. Ms. Alzubi's years-old social media posts are a pretext covering up what is really going on here: an illicit heckler's veto long forbidden by the doctrine named after the ill this Court must cure.

**PARTIES**

10. Plaintiff is an administrator employed with Fort Worth Independent School District in Fort Worth, Texas. Venue is proper because Plaintiff resides within this district and because a substantial part of the events or omissions giving rise to their claims occurred within this district.

11. Defendant Fort Worth Independent School District (hereinafter "FWISD") is an independent school district duly organized under the laws of the State of Texas that may sue and be sued. *See* Tex. Educ. Code § 11.151(a).

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1343 because this action arises under the First and Fourteenth Amendments to the United States Constitution.

13. This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the Northern District of Texas.

14. Plaintiffs' claims for attorneys' fees and costs are predicated upon Title VII, 42 U.S.C. § 2000e-2(m), 42 U.S.C.§ 1988, and Fed. R. Civ. P. 54.

15. Venue in this district is proper pursuant to 28 U.S.C.§ 1391(b) and 1391(e).

**FACTUAL ALLEGATIONS**

16. Shayma Alzubi is an Arab, Muslim administrator of Palestinian national origin.

17. Since 2013, Ms. Alzubi has worked in the Fort Worth Independent School District (FWISD) at its Carter Riverside High School, Arlington Heights High School, and Southwest High School campuses, holding the positions of chemistry teacher, Freshman Success Coach, and Assistant Principal.

3

18. Ms. Alzubi was promoted to the position of Principal of Western Hills High School (WHHS) for the 2026–2027 school year. On May 12, 2026, Ms. Alzubi received and signed her one-year term contract to continue working in FWISD. On May 19, 2026, Ms. Alzubi received and signed her Compensation Quote Request form for the Principal position.

19. On May 22, 2026, FWISD publicly announced via email and its Facebook page that Ms. Alzubi would be serving as Principal of its WHHS campus for the upcoming school year.

20. Internet trolls began stoking mass hysteria by digging up Ms. Alzubi's social media activity to assert that she was unfit for the position, going so far as over a decade prior during Ms. Alzubi's undergraduate days to find a picture of Ms. Alzubi's coloring contest submission at a Chili's restaurant where she had illustrated the expression "Free Palestine" on her pepper.

21. On the morning of May 26, 2026, Ms. Alzubi received a call from Dr. Dorene Benavidez, the Lead Executive Director for the central region of FWISD, regarding the online uproar. Dr. Benavidez instructed Ms. Alzubi to lock down her Facebook account and any other social media accounts Ms. Alzubi may have, but otherwise assuaged Ms. Alzubi's concerns, telling Ms. Alzubi that her social media accounts had already been vetted before she was extended the position. Dr. Benavidez noted that Ms. Alzubi's repost of a Texas journalist's definition of Sharia law was just that, a definition and not cause for concern.

22. Later that morning at around 11:30 AM, Ms. Alzubi received a call from Dr. Kyndra Tyler, the Regional Chief of the central region of FWISD, who was

4

notifying her that she was on her way to see Ms. Alzubi on campus at Southwest High School where she was working at the time.

23. At around 1 PM, Ms. Alzubi received a call from Mr. Isaac Williams, the Regional Chief of the southern region of FWISD, checking in on how she was doing.

24. At around 3 PM, both Dr. Tyler and Mr. Williams arrived at the school. Mr. Williams sat as Dr. Tyler read aloud a statement to Ms. Alzubi, notifying her that she had been temporarily reassigned in her capacity as a FWISD Administrator to the Department of Performance Management and School Choice in the District's Central Office.

25. Later that same day, FWISD removed its online announcement of Ms. Alzubi's promotion to Principal.

26. FWISD also circulated its official statement via an email sent out by Dr. Louis Kushner, Chief of Staff at FWISD, declaring that Ms. Alzubi had been removed from her role and reassigned pending the outcome of an investigation the district would be launching into whether Ms. Alzubi's social media posts aligned with its social media policy and expectations for its staff.

27. For the length of time that Ms. Alzubi was involuntarily reassigned, she was instructed by Dr. Kushner not to attend the meetings that were originally on her calendar in preparation for her new role. This included a transition meeting with the former Principal of Western Hills High School, a new Principal onboarding meeting, three leadership summits for all FWISD Principals and Assistant Principals, and five hiring fairs. She has also missed out on many tasks that she

would have otherwise been working on or completed had she been able to properly transition to her new role as originally planned on June 1, 2026, including overseeing the creation of a master schedule for the upcoming school year.

28. On June 17, 2026, Ms. Alzubi met with FWISD in full cooperation with its investigation.

29. Ms. Alzubi was questioned about the following social media activity:

    a. A 4-photo collage created by Facebook user Nick Eggleston, consisting of:

        i. A photograph identifying Ms. Alzubi in which she is smiling at the Fort Worth Stock Yards. This picture was posted on November 17, 2024, and was taken while she showed her visiting family around the city within the last year or so.

        ii. A selfie in which Ms. Alzubi is smiling with two former Carter High School teachers at a TCU versus UT football game, overlayed with the Palestinian flag. Ms. Alzubi had set this photograph as her profile picture on May 18, 2021.

        iii. A photograph taken in 2009 of Ms. Alzubi with four of her friends from college attending a John Legend concert in San Bernadino, California, later posted with an overlayed filter stating "I am #WithDreamers. I SUPPORT DACA."

        iv. Ms. Alzubi's resharing of a Facebook post originally made by "Texas Reporter," defining "Sharia law" as really just Muslims' values in practice (i.e., praying five times a day, fasting during

6

Ramadan, donating to charity, abstaining from the consumption of pork, and maintaining an all-around ethical lifestyle). Ms. Alzubi reshared this post on January 23, 2026, as an expression of her religious beliefs and in an effort to educate the public she believed might not understand Islam accurately.

b. A photograph of Ms. Alzubi and her mother at one of her cousin's wedding events, overlayed with a "Black Lives Matter" filter. Ms. Alzubi had set this photograph as her profile picture on June 13, 2020, in remembrance of Atatiana Jefferson's murder in Fort Worth in her own home by a white police officer the year prior, as well as Botham Jean's murder in his own apartment in Dallas by a white police officer the year before that.

c. Ms. Alzubi's resharing of a Facebook post made by the "FWISD 4 ALL" account, which encouraged the public to attend an upcoming school board meeting in support of a measure to resume FWISD's mask policies. Ms. Alzubi had reshared this post on August 25, 2021.

30. All the social media activity described above originated from her personal social media accounts on her personal devices and was not conducted during business hours.

31. Ms. Alzubi's social media activity in support of DACA, BLM, and masking during the pandemic is akin to that of many other FWISD employees who have not experienced the same repercussions as Ms. Alzubi has.

32. On July 8, 2026, the District has emailed out a public statement replacing Ms. Alzubi with Mr. Lucio Rodriguez as Interim Principal of Western Hills High School.

## CLAIMS FOR RELIEF

### CLAIM I:
### RETALIATION IN VIOLATION OF
### THE FREE SPEECH CLAUSE OF FIRST AMENDMENT

33. Plaintiff incorporates by reference all preceding paragraphs as set forth herein.

34. § 1983 provides individuals the right to sue state governments, government employees, and others acting "under color of state law" for civil rights violations.

35. The First Amendment to the United States Constitution provides that "Congress shall make no law…abridging the freedom of speech." The First Amendment applies to state and local governments under the Fourteenth Amendment to the United States Constitution.

36. Local governing bodies and local officials in their official capacities can be sued directly under § 1983 in situations where the action that is alleged to be unconstitutional implements or executes a policy or decision promulgated by those whose acts may fairly be said to represent official policy. *See Monell v. Dept. of Social Serv. of Cty. of New York*, 436 U.S. 658, 659 (1978).

37. Plaintiff suffered First Amendment violations as a result of Defendant enforcing its social media policies against her in retaliation for her constitutionally protected speech.

38. A public school employee has a First Amendment retaliation claim if she can establish: (1) that she spoke as a private citizen on a matter of public concern; (2)

8

that she suffered an adverse employment action; and (3) that her protected speech was a substantial or motivating factor in the adverse action. *Pickering v. Bd. of Educ. of Tp. High School Dist. 205, Will Cty., Illinois*, 391 U.S. 563 (1968).

39. Once established, the employee's interest in speaking on a matter of public concern must be weighed against the government employer's interest in promoting efficient public services. *Id.*

40. Speech made pursuant to official duties is categorically unprotected, as it is not speech made as a private citizen. *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

41. Plaintiff's photographs with filter overlays expressing support for BLM, DACA, and Palestine, as well as her reshares pertaining to the issues of Sharia law and FWISD's masking policy were made on her personal accounts, on her own devices, on her own time and not part of any professional responsibility, thus constituting private citizen speech. *See Gaines v. Jefferson Cty. School Dist.*, 705 F.Supp.3d 664 (S.D. Miss. 2023) (a school employee's social media post made on personal time and outside the chain of command was not made pursuant to official duties).

42. Plaintiff's posts also satisfy the public concern requirement, as they address a matter of public concern relating to political, social, or other matters of community interest. *See Connick v. Myers*, 461 U.S. 138 (1983). Plaintiff's choice of filters and reshares pertained to BLM, DACA, her national origin, COVID-19 pandemic responses, and Sharia law in the context of Republican Proposition 10 on the Texas ballot, which called for the state to prohibit Sharia law. *See Jones v. Matkin*, 623 F.Supp.3d 774 (E.D. Tex. 2022) (holding that that a college

professor's social media post about the college's pandemic reopening plan was protected under the First Amendment). Plaintiff's speech all engaged with locally and nationally debated political and social issues without targeting any individual or making false statements. *See Gaines*. Plaintiff's speech at issue thus constituted a private citizen's speech on matters of public concern.

43. Plaintiff's reassignment pending an investigation constitutes an adverse employment action sufficient to support a First Amendment retaliation claim. *See Jones v. Indiana Area School Dist.*, 397 F.Supp.2d 628 (W.D. Penn. 2005) (holding that an involuntary transfer in response to protected speech is sufficient for a First Amendment claim). When Defendant lent legitimacy to online trolls attacking Plaintiff by publicly reevaluating its decision to appoint her as Principal and disclosing that she had been temporarily reassigned to a different position for the foreseeable future, Defendant's actions significantly disrupted Plaintiff's career trajectory while also causing irreversible reputational harm to her.

44. Plaintiff's protected speech qualifies as a substantial or motivating factor in Defendant's decision to reassign her given the temporal proximity between the surfacing of her past social media posts on May 26, 2026, and her reassignment later that day. This is further evinced by Defendant's schoolwide email blast which explicitly stated that "[her] posts may not align with the district's social media policy and expectations for staff" and "[t]herefore, [she would] be reassigned pending the outcome of an investigation," and the fact that no other conduct was identified as the basis for the investigation. *See Mt. Healthy City School Dis. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *see also Sensabaugh v.*

*Halliburton*, 937 F.3d 621 (6th Cir. 2019) (finding that a motivating factor is essentially a but-for cause).

45. Plaintiff's speech far outweighs FWISD's interest in efficient public services, as it never disrupted workplace operations, harmed professional relationships, or impeded her own job performance. *See Pickering*. This is evidenced by the fact that until May 26, 2026, no one who worked with Plaintiff had ever brought any complaints to do with her social media activity, be it from over a decade prior or present day. Plaintiff never brought politics into her interactions with the students, nor was it ever relevant in her capacity as a chemistry teacher or a Freshman Success Coach or an Assistant Principal. Plaintiff's posts targeted no student, parent, or colleague; rather, she was expressing support for marginalized communities and public health policy— the type of civic engagement lauded in *Pickering* as critical to informed democratic participation. Under *Pickering*, the mere fact that Plaintiff's social media activity generated some controversy does not justify Defendant's retaliation against her, as the district's interest in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public.

WHEREFORE, Plaintiff requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

**CLAIM II:**
**DISPARATE TREATMENT ON THE BASIS OF**

## RELIGION AND NATIONAL ORIGIN IN VIOLATION OF
## THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

46. Plaintiff incorporates by reference all preceding paragraphs as set forth herein.

47. § 1983 provides individuals the right to sue state governments, government employees, and others acting "under color of state law" for civil rights violations.

48. In order to bring an Equal Protection claim, a plaintiff must be a member of a protected class. In the present case, both the Plaintiff's Palestinian national origin and her Muslim religious identity constitute clearly protected classifications and allow her to proceed.

49. The Fifth Circuit has established a two-part test for Equal Protection claims under § 1983 for a plaintiff to allege and prove: (1) that she received treatment different from that received by similarly situated individuals and (2) that the unequal treatment stemmed from a discriminatory intent. *See Fennell v. Marion Indep. School Dist.*, 804 F.3d 398 (2015).

50. Defendant treated Plaintiff differently than its similarly situated employees when it singled her out for views she had expressed on her personal social media that were similar to those of her colleagues.

51. Defendant did not investigate and reassign Plaintiff's colleagues despite the fact that they were known to have participated in similar conduct by posting online about issues like BLM, DACA, and COVID-19.

52. Defendant's unequal treatment stemmed from discriminatory intent against Plaintiff on the basis of her Muslim identity and Plaintiff national origin.

53. Several factors are relevant to proving discriminatory intent: (1) the discriminatory impact of the decision; (2) the historical background of the

decision; (3) the sequence of events leading up to the decision; (4) departures from normal procedural sequences; and (5) the legislative or administrative history. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977). Intent may be inferred from circumstantial evidence. *Veasey v. Abbott*, 830 F.3d 216 (2016).

54. Defendant's decision to reassign Plaintiff was motivated, at least in part, by her Muslim identity and Plaintiff national origin rather than solely by concerns about the content of her social media posts or community relations.

55. The online uproar that preceded the reassignment was specifically directed at the administrator's identity as a Palestinian Muslim, as evidenced by her profile picture signaling support for Palestine and her repost regarding Sharia law. Plaintiff was targeted precisely because of who she is.

56. The sequence of events — the announcement of Plaintiff's promotion followed immediately by her reassignment triggered by an online campaign targeting her religion and national origin — is itself probative of discriminatory intent.

57. Defendant does not routinely investigate or reassign administrators for social media activity on matters of public concern. This is clear based on many of Plaintiff's colleagues posting on BLM, DACA, or COVID-19 without any administrative repercussions, lending strong support to the inference of discriminatory intent.

58. A reassignment pending investigation constitutes a sufficient injury to support an Equal Protection claim. *See Covington v. Beaumont Independent School Dist.*, 714 F.Supp. 1402 (E.D. Tex. 1989).

59. Plaintiff was certainly adversely impacted by Defendant's actions in publicly denying Plaintiff her promotion, subjecting her to a prolonged investigation, and reassigning her to a different position before ultimately replacing her.

WHEREFORE, Plaintiff requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

## Prayer for Relief

WHEREFORE, Plaintiffs request that this Honorable Court enter judgement in favor of Plaintiff and against Defendants, on each and every count in this Complaint, and enter an order awarding the following relief:

A.  that FWISD fully reinstate Ms. Alzubi as Principal of FWISD's Western Hills High School for the 2026–2027 school year,

B.  that FWISD pay compensatory and punitive damages in an amount to be determined by a jury at trial, and

C.  that FWISD pay Plaintiff's attorneys fees and litigation costs.

## Jury Demand

Plaintiffs demand a trial by jury of the above-referenced causes of action.

Dated: July 9, 2026                                    Respectfully submitted,

                                                       BY:    */s/ Lena F. Masri*
                                                       LENA F. MASRI (20251)
                                                       GADEIR I. ABBAS (20257)*

                                                       CAIR Legal Defense Fund
                                                       453 New Jersey Ave, SE
                                                       Washington, DC 20003

14

(202) 488-8787

*Gadeir Abbas is licensed in VA only, not in D.C.  Practice limited to federal matters.*

/s/ *Jason C.N. Smith*
JASON C.N. SMITH
State Bar No. 00784999

LAW OFFICES OF JASON SMITH
612 Eighth Avenue
Fort Worth, Texas 76104
(817) 334-0880, telephone
(817) 334-0898, facsimile
Email: jasons@letsgotocourt.com

ATTORNEYS FOR PLAINTIFF