UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHAYMA ALZUBI, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:26-cv-00838-P |
| | § | |
| FORT WORTH INDEPENDENT SCHOOL | § | |
| DISTRICT, FWISD SUPERINTENDENT | § | |
| DR. PETER LICATA, in his individual and | § | |
| official capacity, and FWISD CHIEF OF | § | |
| STAFF DR. LOUIS KUSHNER, in his | § | |
| individual and official capacity, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**DEFENDANT FORT WORTH INDEPENDENT SCHOOL DISTRICT'S
MOTION TO DISMISS PLAINTIFF SHAYMA ALZUBI'S AMENDED COMPLAINT
AND BRIEF IN SUPPORT**

K. ADAM ROTHEY
arothey@thompsonhorton.com
State Bar No. 24051274

KATHRYN E. LONG
klong@thompsonhorton.com
State Bar No. 24041679

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(713) 583-8884 – Facsimile

*Attorneys for Defendant*
*Fort Worth Independent School District*

## SUMMARY OF ARGUMENT

Plaintiff Shayma Alzubi complains that Fort Worth Independent School District ("Fort Worth ISD" or the "District") has violated her First Amendment and Fourteenth Amendment equal protection rights by promoting her to a higher-paying, District-level position over a campus principal position. Alzubi's largely unchanged Amended Complaint (Dkt. 20, "Complaint") fails to state plausible claims against the District. Alzubi does not allege a plausible First Amendment retaliation claim because she has not plausibly alleged that her speech was the but-for cause of an adverse employment action. Alzubi also does not allege a plausible Equal Protection claim because she has not alleged anything more than conclusory recitations of the elements of such a claim. But even if she had adequately pleaded constitutional violations, her claims must still be dismissed because she entirely fails to allege facts from which the Court can reasonably infer that an official policy or custom of Fort Worth ISD was the moving force behind those purported violations. For these reasons, as more fully explained below, Alzubi's claims should be dismissed.

## RELEVANT FACTUAL ALLEGATIONS

Fort Worth ISD has employed Shayma Alzubi since 2013. Dkt. 20, ¶ 19. Most recently, she worked as an assistant principal at one of the District's high schools. *Id.* Alzubi remains employed by the District under a one-year term contract. *Id.* ¶¶ 20, 36. Alzubi is an Arab, Muslim of Palestinian national origin. *Id.* ¶ 18.

On May 22, 2026, the District publicly announced that in the upcoming school year, Alzubi would be serving as principal of Western Hills High School. *Id.* ¶ 20. The announcement generated "mass hysteria" as information surfaced regarding past social media posts by Alzubi about various causes including Palestinian freedom, support for DACA and Black Lives Matter, mask wearing during COVID, and Sharia law. *See id.* ¶¶ 22, 31. Alzubi alleges that a District Executive Director

1

informed Alzubi that her social media accounts had been "vetted" before extending her the Principal position and did not raise concerns. *Id.* ¶¶ 23–25. Numerous Fort Worth ISD officials checked in on Alzubi to see how she was doing in the face of the backlash. *Id.*

On May 26, 2026, Dr. Kyndra Tyler, Regional Chief of the central region of Fort Worth ISD, and Mr. Isaac Williams, Regional Chief of the southern region of Fort Worth ISD, visited Alzubi at her place of employment. *Id.* ¶ 26. Dr. Tyler read a statement informing Alzubi that she was being temporarily reassigned in her capacity as a Fort Worth ISD administrator pending an investigation into questions about whether her social media posts violated District policies. *See* Dkt. 20, ¶¶ 26, 28.

On June 17, 2026, the District interviewed Alzubi as part of the investigation. *Id.* ¶ 30. On July 8, 2026, the District issued an announcement that it "fully supports Ms. Alzubi as a valued member of the Fort Worth ISD leadership team." Dkt. 23-11.[1] The District further stated that as of the date of that announcement, "Ms. Alzubi has been promoted to a district level administrative leadership position," that the District was "grateful for the lasting impact that she has had in her previous roles as a teacher and Assistant Principal," and that the District "look[ed] forward to seeing her continued impact throughout the District in this new role." *Id.* On July 15, the District formally notified Ms. Alzubi that the allegations against her were unsubstantiated and that she would be reassigned to the Principal Program Administrator position. Dkt. 20 ¶¶ 35–36.

---

[1]    While this announcement is not attached to the Complaint, the Complaint specifically references it, and Alzubi attaches it as evidence in support of her Amended Motion for Preliminary Injunction. *See* Dkt. 20, ¶ 34; Dkt. 23-11. Documents referenced in a complaint that are central to the plaintiff's claims are properly considered by the Court in ruling on a motion to dismiss for failure to state a claim. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The District therefore asks that the Court consider the July 8, 2026 announcement referenced in Alzubi's Complaint and attached to her Motion for Preliminary Injunction so the Court can ascertain the full content and context of the announcement.

**STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations that, when assumed to be true, state a claim for relief that "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. When a complaint pleads facts that are "merely consistent with" a defendant's liability, "it 'stops short of the line between possibility and plausibility.'" *Id*. (citation omitted). Although a court must accept well-pleaded facts as true, neither conclusory allegations nor "legal conclusions masquerading as factual conclusions" are entitled to a presumption of truth. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009); *see also Iqbal*, 556 U.S. at 678–79, 681. A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must provide "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ARGUMENT AND AUTHORITIES**

**I.    Legal framework for entity liability under section 1983.**

To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). The existence of a constitutional violation is a "threshold" issue. *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009); *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997).

The standard for suing a school district under section 1983 is rigorous. A school district may be held liable only for acts for which it is actually responsible; vicarious liability and

3

respondeat superior liability are prohibited. *See Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. N. Y. City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Under *Monell*, a plaintiff must show that the constitutional violation was the direct result of the execution of an "official" policy or custom, the custom or policy was approved or sanctioned by the entity's final "policymaker," and the final policymaker acted with "deliberate indifference," thus causing the plaintiff's injury. *See Piotrowski*, 237 F.3d at 578–79. The identification of the "final policymaker" is a question of state law. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). Under Texas law, the final policy-making authority for a school district is the district's board of trustees, acting as a body corporate. *See* TEX. EDUC. CODE §§ 11.051(a), 11.051(a-1), 11.151(b); *see also Rivera*, 349 F.3d at 247. While she need not plead the specific identity of the policymaker, *see Groden v. City of Dall., Tex.*, 826 F.3d 280, 284 (5th Cir. 2016), a section 1983 plaintiff must show that the policymaker adopted an unconstitutional policy or that it otherwise knew about or acquiesced in a persistent and widespread, or "deeply embedded," unconstitutional practice. *See Piotrowski*, 237 F.3d at 578–79; *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

The unconstitutional conduct must be "directly attributable" to the final policymaker. *Rivera*, 349 F.3d at 247; *Bennett*, 728 F.2d at 768. A plaintiff must establish that the entity through its deliberate conduct "was the moving force behind the injury" alleged and must establish a direct causal link between the governmental entity's actions and the deprivation of a federally protected right. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997). This requirement ensures that liability under section 1983 is limited to "action for which the [entity] is actually

responsible . . . that is, acts which the [entity] has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 479–80.

## II.   Alzubi fails to state a First Amendment retaliation claim.

### A.   Required elements to state a First Amendment retaliation claim.

To state a First Amendment retaliation claim, a plaintiff must show that: "(1) [she] suffered an adverse employment action; (2) [she] spoke as a [private] citizen on a matter of public concern; (3) [her] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Nixon v. City of Hous.*, 511 F.3d 494, 497 (5th Cir. 2007) (citations and quotes omitted). In the public employment context, the Supreme Court has attempted to strike a balance between promoting "the individual and societal interests that are served when employees speak as citizens on matters of public concern" while, at the same time, preserving the "needs of government employers attempting to perform their important public functions." *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006). In sum, the First Amendment protects a public employee's "right, in certain circumstances, to speak as a citizen on matters of public concern." *Davis v. McKinney*, 518 F.3d 304, 311 (5th Cir. 2008) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1963)).

### B.   Alzubi does not state a violation of a right secured by the First Amendment because she does not plausibly allege she suffered an adverse employment action or that her speech caused an adverse employment action.

Alzubi fails to state a retaliation claim because she does not plausibly allege she has suffered an adverse employment action because of her speech. On the question of whether a public employee has suffered an adverse employment action under the First Amendment retaliation framework, the Fifth Circuit has recently reaffirmed the "narrow view" that "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands" under the First Amendment retaliation framework. *Lowery v. Mills*, 157 F.4th 729,

5

743 (5th Cir. 2025). "[M]ere accusations or criticism," "investigations," and "false accusations" are not adverse employment actions. *Id*. (professor did not experience adverse employment action where not fired or demoted and contract renewed and pay increased); *see Mason v. City of Waco*, No. 23-50108, 2024 WL 775508, at *3 (5th Cir. Feb. 26, 2024) (per curiam). And changes in assignments or other similar administrative decisions do not constitute adverse employment actions in the First Amendment context. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) ("Actions such as 'decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures,' while extremely important to the person who has dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation."). Moreover, in the First Amendment context, the Fifth Circuit has recognized that federal courts should be extremely hesitant "to invade and take over" in the area of education: in other words, a federal court is not the appropriate forum in which to seek redress over "disputes … [concerning] teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters." *Dorsett v. Bd. of Trs. for State Colls. & Univs.*, 940 F.2d 121, 123–24 (5th Cir. 1991).

Under this framework, Alzubi has not plausibly alleged that she suffered an "adverse employment action" because she was not discharged, demoted, or reprimanded. On the contrary, Alzubi remains under contract with the District and has, according to the District's public announcement of her new position, been promoted to a higher paying, District-level administrative leadership position while publicly recognizing her value to the District. *See* Dkt. 23-11. And "'a plaintiff's subjective perception that a demotion has occurred is not enough' to constitute an adverse employment decision." *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999). Moreover, a mere investigation—especially one that does not substantiate the alleged

6

misconduct—does not constitute an adverse employment action under the First Amendment retaliation framework. *Lowery*, 157 F.4th at 743; *see Benningfield v. City of Hous.*, 157 F.3d 369, 376 (5th Cir. 1998) ("Although a reprimand can constitute an adverse employment action, an investigation does not.").

Because Alzubi does not plausibly allege that she suffered an adverse employment action, she also does not plausibly allege that her speech precipitated any adverse employment action. Additionally, under the *Mt. Healthy* doctrine, to support a First Amendment retaliation claim, the plaintiff's protected speech must be the "but for" cause of the adverse employment action. *Moore v. Huse*, 578 F. App'x 334, 339 (5th Cir. 2014) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). Mere awareness of the alleged protected activity without evidence of a retaliatory motive is insufficient to establish a causal relationship. *See, e.g., Gerhart v. Hayes*, 217 F.3d 320, 322 (5th Cir. 2000). But here, Alzubi essentially pleads nothing more than mere awareness of her speech without any plausible allegations of a retaliatory motive. In fact, Alzubi affirmatively alleges that the basis of the reassignment decision was "anticipation of disruptions and threats to WHHS operations," not her speech. Dkt. 20 ¶ 37. And Alzubi's allegations that the District was aware of her speech before it decided to promote her to principal and before it decided to promote her even further to a District-level position also do not plausibly suggest any retaliatory intent by the District. *See* Dkt. 20, ¶ 21; Dkt. 23-11.

C.    **Alzubi does not plausibly allege that any official policy or custom of Fort Worth ISD caused any alleged deprivation of her First Amendment rights.**

Even if Alzubi had stated a First Amendment violation—which she has not—she has not plausibly alleged that an official policy or custom of Fort Worth ISD's Board of Managers (the "Board") was the moving force behind the violation as required to state a section 1983 claim

7

against the District.[2] *Sharp v. City of Hous.*, 164 F.3d 923, 932 (5th Cir. 1999) (to prevail on a First Amendment retaliation claim against a municipality, a plaintiff must, among other things, demonstrate that an official policy or custom of the municipality caused the adverse action).

The Complaint does not identify any specific policy of Fort Worth ISD's Board that allegedly caused a violation of Alzubi's First Amendment rights or resulted in retaliation for engaging in constitutionally protected speech. The Complaint also pleads no facts regarding a widespread practice or custom of such violations. Indeed, the Complaint references only the incidents relative to Alzubi. But "[i]solated [constitutional] violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *see Piotrowski*, 237 F.3d at 581. The Complaint, therefore, does not demonstrate that Fort Worth ISD had a policy or custom explicitly authorizing or condoning a violation of Alzubi's First Amendment rights or engaging in adverse personnel action in retaliation for her exercise of her First Amendment rights. *See, e.g., Hernandez v. City of Grand Prairie*, No. 3:16-CV-2432-L, 2017 WL 4098596, at *4 (N.D. Tex. Sept. 15, 2017) ("The ultimate question in deciding the sufficiency of a complaint is whether a person has alleged facts to show that a policymaker promulgated or ratified an

---

[2]     The Court may take judicial notice of matters of public record in ruling on a motion to dismiss. *Walker*, 938 F.3d at 735. The Texas Education Agency ("TEA") intervened in the operations of Fort Worth ISD and appointed a Board of Managers to replace the locally elected Board of Trustees. *See* https://tea.texas.gov/health-safety-and-discipline/school-boards/school-governance/board-managers. Boards of Managers are leadership teams "appointed by TEA" under state law. *Id.*; *see* TEX. EDUC. CODE § 39A.202. While a Board of Managers is in place, the "powers of the board of trustees of the district are suspended … ." TEX. EDUC. CODE § 39A.202. TEA has also appointed a Conservator over Fort Worth ISD under state law. *See* https://tea.texas.gov/health-safety-and-discipline/school-boards/school-governance/letter-from-tea-to-superintendent-and-board-of-trustees-october-23-2025.pdf. The TEA Conservator has the authority to direct an action of the Board of Managers or to approve or disapprove of any action of the Board of Managers under Texas Education Code § 39A.003(c). *See* https://tea.texas.gov/health-safety-and-discipline/school-boards/school-governance/bom-faqs-1.pdf. The Fifth Circuit has affirmed dismissal of constitutional claims brought against TEA under section 1983 on the basis of the State's Eleventh Amendment sovereign immunity. *Ross v. Tex. Educ. Agency*, 409 F. App'x 765, 768–69 (5th Cir. 2011). Fort Worth ISD is not aware of any cases addressing the issue of whether a school district led by a TEA-appointed Board of Managers and overseen by a TEA-appointed Conservator enjoys Eleventh Amendment immunity. Fort Worth ISD nonetheless raises the question so as not to waive any such jurisdictional argument against Alzubi's claims.

unconstitutional policy that resulted in injury to him or her."); *see also Whitley v. Hanna*, 726 F.3d 631, 648–49 (5th Cir. 2013) (dismissing claim when plaintiff made no specific factual allegations about entity's policies), *cert. denied*, 134 S. Ct. 1935 (2014). Therefore, Alzubi's First Amendment claims under section 1983 claim should be dismissed.

### III.   Alzubi fails to state a Fourteenth Amendment Equal Protection claim.

#### A.   Legal framework for Equal Protection claims under section 1983.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike. *Duarte v. City of Lewisville*, 858 F.3d 348, 353–54 (5th Cir. 2017). Equal protection claims require invidious and purposeful discrimination. *See Personnel Admin. v. Feeney*, 442 U.S. 256, 279 (1979). A plaintiff must show that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). But conclusory assertions that a plaintiff was treated differently than other similarly situated persons are insufficient to state an equal protection claim. *Pugh v. Byrd*, 574 F. App'x 505, 510 (5th Cir. 2014). And mere allegations of disparate treatment are not evidence of discriminatory intent. *Id.*

#### B.   Alzubi fails to plead a plausible Equal Protection claim based on her conclusory allegations of disparate treatment and lack of allegations that any Equal Protection violation stemmed from an official custom or policy of Fort Worth ISD.

The Complaint contains little more than conclusory allegations that Fort Worth ISD treated Alzubi differently than similarly situated individuals on account of her religion or national origin. For example, Alzubi alleges that her social media activity "is akin to that of many other FWISD employees who have not experienced the same repercussions" (Dkt. 20, ¶ 31), but fails to allege

any specific facts in support of that conclusion from which the Court can draw a reasonable inference that the disparate treatment alleged even occurred, much less that it stemmed discriminatory intent on account of Alzubi's religion or national origin. *See Bell v. State Prison Offs.*, No. 23-30339, 2024 WL 2863293, at *5 (5th Cir. June 6, 2024) (affirming dismissal of equal protection claims because nothing more than conclusory allegations that any defendant selected a particular course of action based on an intent to discriminate). Indeed, all of Alzubi's allegations in support of her Equal Protection claim suffer from the same deficiency: they broadly allege nothing more than a formulaic recitation of the elements of a cause of action (*see* Dkt. 20, ¶¶ 54–57), which fails to satisfy the pleading standard under *Twombly* and *Iqbal*.

Furthermore, even if Alzubi had advanced specific allegations plausibly alleging a violation of her Equal Protection rights, her claim against Fort Worth ISD also fails because she alleges *no* facts from which the Court can plausibly infer that any action taken with respect to Alzubi was the result of an official custom or policy of discrimination promulgated by Fort Worth ISD's Board. As a result, dismissal of her Equal Protection claim is required. *See G.M. ex rel Lopez v. Shelton*, 595 F. App'x 262, 266 (5th Cir. 2014) (affirming 12(b)(6) dismissal and declining to reach the merits of Equal Protection claim because the plaintiff had not "adequately pleaded the existence of a policy or custom" attributable the school district's board of trustees that was the moving force behind any constitutional violation), citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012).

## CONCLUSION

For the foregoing reasons, Fort Worth ISD respectfully requests that the Court dismiss Ms. Alzubi's claims against it and award it all other relief to which it has or may show itself entitled.

Respectfully submitted,

*/s/  Adam Rothey*
K. ADAM ROTHEY
arothey@thompsonhorton.com
State Bar No. 24051274

KATHRYN E. LONG
klong@thompsonhorton.com
State Bar No. 24041679

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(713) 583-8884 – Facsimile

*Attorneys for Defendant*
*Fort Worth Independent School District*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been served upon all counsel of record via the Court's electronic filing system on July 27, 2026.

Lena Masri                          Jason C.N. Smith
Gadeir Abbas                        Law Offices of Jason Smith
Hufsa Husain                        612 Eighth Avenue
CAIR Legal Defense Fund             Fort Worth, TX 76104
453 New Jersey Avenue SE            jasons@letsgotocourt.com
Washington, DC 20003
ldf@cair.com


/s/  *Adam Rothey*
K. Adam Rothey

11