UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

SHAYMA ALZUBI,

Plaintiff,

v.                                                    No. 4:26-cv-0838-P

FORT WORTH INDEPENDENT
SCHOOL DISTRICT, ET AL.,

Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff Shayma Alzubi's Motion for Preliminary Injunction ("Motion"), filed on July 23, 2026. ECF No. 23. In her Motion, Alzubi requests a mandatory preliminary injunction, asking the Court to immediately force Defendants to reinstate her to a position from which she was reassigned. ECF No. 23.

However, the evidence demonstrates that Alzubi was not fired, disciplined, demoted, or deprived of any benefit of employment. Instead, she was reassigned to a higher-paying and arguably less stressful position. Under these circumstances, Alzubi fails to establish that she suffered the type of adverse action necessary to justify the extraordinary remedy of a mandatory preliminary injunction.

Accordingly, for the reasons set forth herein, after reviewing the Motion, the docket, the evidence, and the applicable law, the Court will **DENY** Alzubi's Motion.

## BACKGROUND

Alzubi has worked for Fort Worth Independent School District ("the District") since 2013. ECF No. 23 at 6. After Alzubi served in various leadership roles at various schools, the District hired her to serve as the Principal of Western Hills High School ("WHHS") for the 2026–2027 school year. ECF No. 23 at 6. The District formally offered Alzubi the

role on May 19, 2026, and the District publicly announced Alzubi's new role on May 22, 2026, via its Facebook. ECF No. 23 at 6.

Four days later, the District took down Alzubi's hiring announcement due to an eruption of "hysteria" and towards Alzubi's new role. ECF No. 23 at 5–7. This eruption was caused by Alzubi's years-old social media activity. ECF No. 23 at 6–7. The posts included Alzubi's expressions of her views and religion, which she made on her personal social media account. ECF No. 23 at 6–7. The District claimed the community's reaction was riddled with threatening messages, which raised concern about Alzubi's safety as well as the safety of other employees' on campus. ECF No. 25 at 9. Alzubi herself was also worried about her safety after the social backlash. ECF No. 25 at 10.

That afternoon, District Chief of Staff, Dr. Kushner, emailed the District's official statement acknowledging the public's response towards Alzubi's new role. ECF No. 23 at 7. Dr. Kushner then announced that the District decided Alzubi would be reassigned to a new role, pending the outcome of its investigation into her social media activity. ECF No. 23 at 7. He wrote that her social media posts "*may* not align with the District's social media policy and expectations for staff." ECF No. 23 at 7 (emphasis added).

The District temporarily reassigned Alzubi to the District's Central Office as the District Administrator to the Department of Performance Management and School Choice. ECF No. 20 at 5–6. This reassignment from her campus was intended to calm the safety concerns and allow the District to impartially investigate her social media activity.[1] ECF No. 25 at 9. The reassignment allowed Alzubi to maintain her pay and benefits, as opposed to being placed on administrative leave, which the District often does when employee misconduct is alleged. ECF No. 25 at 9.

On July 6, 2026, the District offered Alzubi an alternative position as a Principal Program Administrator ("PPA") to train principals and

---

[1] The District later notified Alzubi that its investigation into her social media activity did not substantiate that she violated any District laws or State policies on July 15, 2026. ECF No. 25 at 7.

assistant principals in the District. ECF No. 25 at 11. Alzubi did not accept the new role. ECF No. 23 at 9. The District then emailed the families and staff at WHHS on July 8, 2026, to announce Alzubi's new role and express how it looked forward to seeing her continued impact through her new role. ECF No. 23 at 9. The District, in that same email, announced the new Interim Principal at WHHS. ECF No. 23 at 9.

Alzubi filed her original Complaint with the Court on July 9, 2026. ECF No. 1. Alzubi filed her Amended Complaint on July 20, 2026. ECF No. 20. In her Amended Complaint, Alzubi claims Defendants Dr. Kushner and Superintendent Peter Licata retaliated against her when they reassigned her to a new role, violating her First Amendment rights. ECF No. 20 at 9–13. Alzubi further claims she was disparately treated on the basis of her religion and national origin, by the District and the individual Defendants, which violated her Fourteenth Amendment rights under the Equal Protection Clause. ECF No. 20 at 13–15.

On the same day she filed her original Complaint, Alzubi filed her original Motion for Preliminary Injunction. ECF No. 6. The District filed a Motion to Dismiss on July 16, 2025. ECF No. 17. On July 22, 2026, the parties jointly filed a Notice Regarding Withdrawing Pending Motions and Agreed Briefing Schedule for Amended Motion for Preliminary Injunction. ECF No. 22. The parties' initial motions (ECF Nos. 6, 17) are thus **DENIED as moot**.

Alzubi later filed her Renewed Motion for Preliminary Injunction, asking the Court to grant the Motion and order the District to immediately reinstate her as Principal of WHHS for the 2026–27 school year. ECF No. 23. Accordingly, this Motion is now ripe for review.

## LEGAL STANDARD

To be entitled to a preliminary injunction, a movant must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 402 (5th

Cir. 2025) (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

If a party fails to satisfy any one of the four essential elements, a district court may not grant a preliminary injunction. *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985). A preliminary injunction is an "extraordinary and drastic remedy" that is to be granted "only when the movant, by a clear showing, carries the burden of persuasion" as to each element. *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 772 (N.D. Tex. 2012) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). The first factor, the likelihood of success on the merits, is the most important of the four factors. *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024).

To obtain a mandatory injunction, Plaintiff carries "the burden of showing *clear entitlement* to the relief under the facts and the law." *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 747 F. Supp. 1218, 1220 (N.D. Tex. 1990), *aff'd and remanded*, 920 F.2d 262 (5th Cir. 1990) (emphasis in original); *see also Exhibitors Poster Exchange, Inc. v. Nat'l Screen Serv.*, 441 F.2d 560, 561 (5th Cir. 1971) (stating that a mandatory injunction "should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party"). And where dispositive facts are undisputed (as is the case here), no oral hearing is required. *See Landmark Am. Ins. Co. v. Millenium Realty Invs., LLC*, No. 4:20-cv-01361-O, 2020 WL 9175055, at *1 (N.D. Tex. Dec. 30, 2020). As set forth below, Alzubi cannot demonstrate her entitlement to a preliminary injunction, much less a mandatory preliminary injunction under this heightened standard.

## ANALYSIS

The Court's analysis proceeds in two parts. *First*, the Court concludes Alzubi's First Amendment Retaliation claim is unlikely to succeed on the merits. *Second*, the Court concludes Alzubi fails to carry her burden to establish the three other factors for a preliminary injunction.

The Court must consider each of the preliminary injunction factors, on balance, and determine if all four collectively grant the injunction.

*Picker Intern., Inc. v. Blanton*, 756 F. Supp. 971, 979 (N.D. Tex. 1990). If the plaintiff fails to carry its burden on *any* one of these four factors, a preliminary injunction cannot be granted. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). "The decision to grant an injunction is within the sound discretion of the trial court," *Kern River Gas Trans. Co. v. Coastal Corp.*, 899 F.2d 1458, 1462 (5th Cir. 1990), including a preliminary injunction. *Siders v. City of Brandon*, 123 F.4th 293, 300 (5th Cir. 2024). The Court's determination as to each of the four elements are mixed questions of fact and law, which will be left undisturbed unless clearly erroneous. *Kern River Gas Trans. Co.*, 899 F.2d at 1462.

## A. Alzubi is Unlikely to Succeed in her First Amendment Retaliation Claim on the Merits

To determine Plaintiff's likelihood of success on the merits, the Court must look to the standards set by substantive law. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). Where a plaintiff is unable to show a likelihood of success on the merits, a preliminary injunction is not warranted. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 589 (5th Cir. 2015) (holding that a preliminary injunction was not warranted based on a failure to meet this first factor). The Court looks at the claims brought forth by Alzubi and will determine the likelihood of success on the merits.

To establish her First Amendment Retaliation claim, Alzubi must show: (1) she suffered an adverse employment action; (2) the speech was a matter of public concern; (3) her interest in the speech must outweigh the District's interest in promoting efficiency; and (4) her speech must have motivated the District's actions. *Lowery v. Mills*, 157 F.4th 729, 743 (5th Cir. 2025) (citing *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000)).

1. <u>Alzubi did not suffer an adverse employment action.</u>

The adverse employment standard is an objective standard and asks whether the action would be harsh enough to chill a person of ordinary firmness from speaking out, not whether it might chill that particular plaintiff. *See Keenan v. Tejada*, 290 F.3d 252, 259–60 (5th Cir. 2002)

5

("The focus . . . is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled.") (quoting *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001)).

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux*, 205 F.3d at 157 (cleaned up). "In the employment context, this court's requirement of an adverse employment action serves the purpose of weeding out minor instances of retaliation." *Keenan*, 290 F.3d at 258 n.4. "Given the narrow view of what constitutes an adverse employment action, this court has held that the following are not adverse employment actions: mere accusations or criticism, investigations, psychological testing, false accusations, and polygraph examinations that do not have adverse results for the plaintiff." *Breaux*, 205 F.3d at 157–58 (collecting cases) (cleaned up). However, "[t]ransfers can constitute adverse employment actions if they are sufficiently punitive, . . . or if the new job is markedly less prestigious and less interesting than the old one," or if there is less room for advancement. *See id.* at 157; *see also Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

Here, Alzubi alleges her "removal from the principal position and the public nature of the investigation stains her record of 13 years of service to the district, as though to insinuate that she is a 'troublemaker' of sorts when, in reality, her online presence has never once caused disruption to the workplace," until now. ECF No. 23 at 17. The evidence presented by the District tells a different story. *See generally* ECF Nos. 25; 26.

The District's decision to reassign Alzubi was in her and the District's overall best interest. ECF No. 25 at 23. The terms of Alzubi's contract reserve the District's "right to assign or reassign [her], transfer [her], and to make changes in [her] responsibilities and duties at any time" during this Contract. ECF No. 25 at 13. In her signed contract, Alzubi agreed that she understood this right of the District. ECF No. 25 at 8–9. Alzubi's reassignment to the PPA position does not require a change in her employment contract. ECF No. 25 at 18–19. The new assignment also carries a **higher** annual salary of $130,000.00, and she can still be promoted from this new role. Further, she will be in a role that other principals desire since it arguably has a reduced stress load and other benefits. ECF No. 25 at 20.

6

Yet, Alzubi attempts to compare her situation to cases such as *Harris v. Victoria Independent School District*, but the circumstances are entirely different. 168 F.3d 216, 220–21 (5th Cir. 1999). There, adverse employment actions were found when two teachers were involuntarily transferred mid-year to another similar teaching role while the other was transferred to an alternative learning center for disruptive students. *Id.* In this case the court found the transfers were intended as disciplinary actions and the transfers branded the teachers as "troublemakers." *Id.* Alzubi, however, has been publicly praised by the District for being a valued employee, who has been promoted continuously, and placed in a location that prioritized safety for all. ECF No. 25 at 21.

Further, Alzubi also attempts to use *Porter v. Houma Terrebonne Housing Authority Board of Commissioners* to show that not hiring someone "on the basis of their engagement in protected activities is nonetheless the ultimate adverse employment action." 810 F.3d 940, 947 (5th Cir. 2015). This part of *Porter* stemmed from the *Burlington Northern* standard, which requires the Court to consider the context of the alleged employment action. *Id.*; *see Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). The challenged action needs to be materially adverse to a reasonable employee. *Burlington N.*, 548 U.S. at 54. "The standard is objective, but 'the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'" *Porter*, 810 F. 3d at 945–46 (quoting *Burlington N.*, 548 U.S. at 69). "'[A] plaintiff's subjective perception that a demotion has occurred is not enough' to constitute an adverse employment decision." *Harris*, 168 F.3d at 221 (quoting *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996)).

Given the context of the situation, a reasonable employee would likely understand the reassignment to be a promotion. Alzubi's posts were years old, and she was promoted to a higher paying, arguably less stressful role. ECF No. 25 at 20–21. Alzubi's desire to be in an "outward-facing role" rather than the apparently bureaucratic central office role is a subjective desire, which is not applicable in this standard. ECF No. 23 at 16–17.

Therefore, the Court does not find a likelihood of success on the merits for Alzubi's claim. Alzubi's promotion to a higher paying, more prestigious job would not chill an ordinary person. Though Alzubi applied to be the Principal at WHHS, and even was given the role, the District made its decision in the best interest of campus safety and efficiency, not Alzubi's personal goals. ECF No. 25 at 23.

Because Alzubi has not suffered an adverse employment action, her retaliation claim cannot succeed. Nonetheless, the Court will analyze the remaining factors.

2. Alzubi's social media activity involved matters of public concern at the time of posting.

The Supreme Court has made clear that public employees do not surrender all their First Amendment rights due to their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1963). The First Amendment protects a public employee's "right, in certain circumstances, to speak as a citizen on matters of public concern." *Davis v. McKinney*, 518 F.3d 304, 311 (5th Cir. 2008) (citing *Pickering*, 391 U.S. at 568). The District agrees that Alzubi's posts fell within public concern. ECF No. 25 at 29. Therefore, the Court proceeds to the next factor.

3. The District's interest in efficiency outweighs Alzubi's interest in speaking on matters of public concern.

Although Alzubi's posts are deemed matters of public concern, the Court must consider whether Alzubi's interest in free speech outweighs "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Victor v. McElveen*, 150 F.3d 451, 457 (5th Cir. 1998) (citing *Pickering*, 391 U.S. at 568). "In striking this balance we should examine whether the speech was likely to generate controversy and disruption, impeded the school's general performance and operation, and affected working relationships necessary to the department's proper functioning." *Harris*, 168 F.3d at 223; *see Brawner v. Richardson*, 855 F.2d 187, 192 (5th Cir.1988) (citing *Pickering*, 391 U.S. at 569–73).

8

Here, the District has a duty to protect not only its students, but also its employees. ECF No. 25 at 30–31. Additionally, the District has an interest in functioning efficiently and avoiding disruption. ECF No. 25 at 30–31. This balance led to Alzubi being moved, to ensure the safety of Alzubi and others. ECF No. 25 at 23–24.

Alzubi attempts to argue that there were no disruptions, and that a "real, not imagined, disruption is required" to show an impact on the District's operations or performance. *Branton v. City of Dallas*, 272 F.3d 730, 741 (5th Cir. 2001) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1115 (5th Cir.1983)); *see Harris*, 168 F. 3d at 223. But the District has established that real threats were made towards Alzubi and other District staff, specifically a postcard threatening sexual violence and a phone call threatening physical violence. ECF No. 25 at 10. These threats disrupted the safety, and naturally, the efficiency of the District. ECF No. 25 at 31. The balance weighs in the District's favor.[2]

4. The District's actions were motivated by safety concerns, not Alzubi's posts.

As previously stated, Alzubi did not show any adverse actions were taken. Further, no actions taken by the District were substantially motivated by the protected speech. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Under the *Mt. Healthy* doctrine, Alzubi's protected speech must be the "but for" cause of the adverse employment action. *Moore v. Huse*, 578 F. App'x 334, 339 (5th Cir. 2014) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)).

Here, Alzubi was hired and continued her employment at the District all while she made these posts. ECF No. 23 at 8–9. Alzubi was even hired as a principal and promoted to PPA despite her posts. ECF Nos. 25 at 23. The actions taken by the District, therefore, were motivated by the threats, not the content of Alzubi's posts. ECF No. 25 at 23–24. Alzubi wrongly assumes that the District "admits that [her] social media posts

---

[2] The District reserves right to discipline or terminate staff for electronic media use that interferes with an employee's ability to effectively perform their duties. ECF. No 26-1 at 26. Yet, the District is adamant that Alzubi's social media activity involved no violations of District rules or policies. ECF No. 25 at 23.

caused it to remove her from her assistant principal position and refuse to hire her as principal." ECF No. 23 at 18. The District only admits that it removed her pending an open investigation into her social media activity, and it later determined her activity did not violate any District policies. ECF No. 23 at 9–10.

The District produced evidence that the action it took was not an adverse one. Even if the action was adverse, the District's action was in the interest of efficiency and was motivated by safety.

    5.  <u>Alzubi's Heckler's Veto Argument does not apply here.</u>

"Heckler's veto" doctrine holds that it is not acceptable for the government to prevent a speaker from exercising their constitutional rights because of the reaction to them by others. *Beckerman v. City of Tupelo, Miss.*, 664 F.2d 502, 509 (5th Cir. 1981). More specifically, "[t]he existence of a hostile audience, standing alone, has never been sufficient to sustain a denial of or punishment for the exercise of First Amendment rights." *Id.* at 510. However, the doctrine is not applicable here.

Heckler's veto does not apply as the District has not suppressed Alzubi's constitutionally protected speech. *See Beckerman*, 664 F.2d at 510. The District has established there have been no violations of Alzubi's First Amendment rights. ECF No. 25 at 31. Regardless of her subjective valuations of the principal and PPA roles, an ordinary person would not be chilled by the action taken by the District.

Therefore, the Court concludes Alzubi is unlikely to succeed on the merits of her First Amendment Retaliation claim.

## B. The Threat of Irreparable Harm Factor Weighs in the District's Favor.

Though Alzubi failed the first factor for her Motion for Preliminary Injunction, the Court analyzes the remaining factors.

To satisfy the "irreparable harm" prong of the preliminary-injunction test, a movant must show an "irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Pendergest–Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 569 (5th Cir. 2010). Generally, "a harm is irreparable

where there is no adequate remedy at law[.]" *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Further, the threatened harm must be "more than mere speculation." *Id.* at 601.

Irreparable harm requires the moving party to show: (a) harm to the plaintiff is imminent; (b) the injury would be irreparable; and (c) the plaintiff has no other adequate legal remedy.[3] *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). Irreparable harm must be proven separately and convincingly, or no injunction may be issued. *White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989); *Conlay v. Baylor College of Med.*, No. H-08-1038, 2010 WL 774162, at *5 (S.D. Tex. March 3, 2010). The burden of proof is not reduced by either the existence of an extremely strong likelihood of success on the merits or the egregiousness of the alleged wrong upon which the underlying claim is based. *White*, 862 F.2d at 1212.

Here, Alzubi's arguments for irreparable harm are cursory and presumptive. Alzubi cites *Elrod v. Burns* for the proposition that loss of First Amendment rights constitutes irreparable harm. 427 U.S. 347, 373 (1976). *Elrod* presumes, however, that First Amendment rights have actually been lost. *Id. Elrod* dealt with the practice of patronage dismissals, where the plaintiffs either had been or were in imminent danger of being discharged for not affiliating with a specific political party. *Id.* at 351. By contrast, the evidence before the Court establishes that Alzubi was never at risk of being discharged, but was instead promoted to a more prestigious, higher-paying position. ECF No. 25 at 29. The chasm between Alzubi's position and the plaintiffs in *Elrod* is wide and apparent. Alzubi's statement that the preliminary injunction

---

[3] The irreparable harm at issue here needs to warrant an extraordinary remedy, not just economic damages. *See SO Apartments, L.L.C. v. City of San Antonio, Texas*, 109 F.4th 343, 353 (5th Cir. 2024). The Court rules on the Preliminary Injunction standard of harm, not that there were no damages suffered by Alzubi.

11

analysis thus turns primarily on the merits of her constitutional claims is correct but weighs in the District's favor.[4]

The Court thus concludes the threat of irreparable harm weighs in the District's favor.

## C. The Balance of the Harms and Public Interest Weighs in Favor of the District.

Finally, the remaining injunction factors—balance of the harms and public interest—also tilt in the District's favor. When the government is a party to a case, the balance-of-equities and public-interest factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court must weigh whether "the threatened injury outweighs any harm that may result from the injunction to the non-movant" and whether "the injunction will not undermine the public interest." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051, 1056 (5th Cir. 1997). Likewise, the Court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Having already analyzed the harm or lack thereof to Alzubi, the threatened injury does not outweigh the harm that may result from the injunction to the District, and the public interest will be undermined by the injunction. The evidence establishes that the District was responding to real threats to the safety of Alzubi, other staff, and students. ECF No. 25 at 23–24. Further, in the interest of efficiency, the District determined that the threats and disruptions were likely to continue, and Alzubi's reassignment allowed the District to "be better equipped to respond to threats directed against Ms. Alzubi without major disruptions to students or campus operations." ECF No. 26-1 at 4. When weighed against the danger presented to Alzubi and others, including students, Alzubi's non-existent harm falls short.

Both the balance of the harms and public interest weigh in the District's favor.

---

[4] *Callaway* is irrelevant in this case. 489 F.2d at 576. Alzubi has not established irreparable harm; thus, the status quo is not causing said irreparable harm, and the injunction is still mandatory.

## CONCLUSION

Alzubi is not a scapegoat, nor has she lost her freedom of speech. Alzubi made posts on her personal social media account, which received a negative public response upon the public announcement of her new role. The backlash not only puts Alzubi in danger, but also her coworkers and students. Further, the threats prevent the District from being able to effectively conduct its vast duties. Alzubi is within her right to post whatever she wants, but the District is also well within its right to put the overall safety of its community over a single individual's professional preferences.

The Court questions whether this case is a good use of its or the public's sparse resources. The law does not convert every personnel decision into a federal case, nor every workplace disappointment into a constitutional violation. As Judge Eldon B. Mahon observed in rejecting a constitutional claim arising from a public employer's personnel decision:

> The Federal Court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. . . . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Richards v. City of Weatherford*, 145 F. Supp. 2d 786, 791 n.4 (N.D. Tex. 2001), *aff'd*, 275 F.3d 46 (5th Cir. 2001) (quoting *Bishop v. Wood*, 426 U.S. 341, 349 (1976)).

Accordingly, the Court **DENIES** Plaintiff's Motion. ECF No. 23.

**SO ORDERED** on this **28th day of July 2026.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

13