UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**SHAYMA ALZUBI,**

Plaintiff,

v. **No. 4:26-cv-00838-P**

**FORT WORTH INDEPENDENT SCHOOL DISTRICT, ET AL.,**

Defendants.

## OPINION AND ORDER

On July 20, 2026, Plaintiff Shayma Alzubi filed an Amended Complaint against Defendants Fort Worth Independent School District (the "District" or "FWISD"), District Superintendent Peter Licata ("Licata"), and District Chief of Staff Louis Kushner ("Kushner"). ECF No. 20. Alzubi alleges that Defendants violated her First Amendment and Fourteenth Amendment rights by assigning her to a different position in the District following an investigation into her social media posts. In response, on July 27, 2026, FWISD filed a Motion to Dismiss Plaintiff's Amended Complaint (the "FWISD Motion"). ECF No. 27. On August 17, Defendants Kushner and Licata filed a Motion to Dismiss Plaintiff's Amended Complaint ("Individuals' Motion," together with the FWISD Motion, the "Motions"). ECF No. 34. Having considered the filings and applicable law, the Court finds the Motions should be **GRANTED**.

## BACKGROUND

Plaintiff's claims arise out of FWISD's decision to remove her as incoming principal of Western Hills High School ("WHHS") and reassign her to a different position following an investigation into her social media. ECF No. 20. Alzubi is an Arab Muslim of Palestinian national origin. ECF No. 20 at 4. She has held several positions within the

District and was promoted to the position of Principal of WHHS for the 2026-2027 school year. ECF No. 20 at 4.

Following the District's announcement of Alzubi's promotion to Principal of WHHS, "internet trolls" surfaced Alzubi's past social media posts depicting her political views from years prior. ECF No. 20 at 5. On May 26, 2026, Alzubi was contacted by the Lead Executive Director for the central division of the District instructing her to lock down her Facebook and any other social media accounts. ECF No. 20 at 5. Later that day, Alzubi was notified that she had been temporarily reassigned in her capacity as District Administrator to the Department of Performance Management and School Choice in the District's Central Office. ECF No. 20 at 5–6. The District removed the online announcement of Alzubi's promotion to Principal. ECF No. 20 at 6. Defendant Kushner circulated a statement stating that Alzubi had been removed from her role and reassigned pending the outcome of an investigation into whether Alzubi's social media posts aligned with the District's social media policy. ECF No. 20 at 6.

As part of the District's investigation, Alzubi was questioned about her activity on social media including a photo of her at a football game overlayed with the Palestinian flag; a post stating "I am #WithDreamers. I SUPPORT DACA."; a re-share of a post defining "Sharia law"; a photograph overlayed with a "Black Lives Matter" filter; and a re-share of a post encouraging the public to attend a school board meeting in support of a measure to reinstate mask policies. ECF No. 20 at 7–8.

Following the investigation, the District notified Alzubi that the allegations against her regarding inappropriate behavior were unsubstantiated. ECF No. 20 at 8. The District also notified Alzubi that she was being assigned a new position of Principal Program Administrator. ECF No. 20 at 8. The decision to assign Alzubi to a new position was made by Defendants Kushner and Licata. ECF No. 20 at 8–9.

Alzubi alleges this conduct violated her constitutional rights. Count I asserts that Kushner and Licata, in their individual and official capacities, retaliated against Alzubi for her protected speech in violation

of the Free Speech Clause of the First Amendment. Count II alleges that all Defendants, in their official and individual capacities, violated the Equal Protection Clause of the Fourteenth Amendment by treating Alzubi differently than her colleagues on the basis of her Palestinian national origin and Muslim religious identity. Defendants now move to dismiss Alzubi's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing Alzubi has failed to state a claim for relief.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted); *see also Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (district courts may

consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.").

## ANALYSIS

Plaintiff alleges that (1) Defendants Kushner and Licata violated the Free Speech Clause of the First Amendment by enforcing the District's social media policies in retaliation against her constitutionally protected speech; and (2) all Defendants violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against Alzubi because of her national origin and religious identity.

The Court finds that both claims should be dismissed for failure to state a claim upon which relief can be granted. Because the Court's analysis on whether Plaintiff has alleged constitutional violations is dispositive to the questions of whether Plaintiff has alleged liability under *Monell* and whether the individual defendants are entitled to qualified immunity, the Court first analyzes the substance of Plaintiff's constitutional claims. The Court addresses each in turn.

### A. Plaintiff Fails to State a Plausible Claim for Relief Under the First Amendment

Plaintiff brings her constitutional claims pursuant to 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States[.]" *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). To state a claim under Section 1983, a plaintiff must allege facts showing that she has been deprived of a right secured by the Constitution or the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

To establish a First Amendment retaliation claim, a plaintiff must show: (1) she suffered an adverse employment action; (2) the speech involved a matter of public concern; (3) her interest in the speech outweighs Defendants' interest in the efficient provision of public

services; and (4) her speech motivated Defendants' actions. *Lowery v. Mills*, 157 F.4th 729, 743 (5th Cir. 2025); *see Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000).

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux*, 205 F.3d at 157 (quoting *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d. 1146, 1149 (5th Cir. 1994)). "In the employment context, this court's requirement of an adverse employment action serves the purpose of weeding out minor instances of retaliation." *Keenan v. Tejeda*, 290 F.3d 252, 258 n.4 (5th Cir. 2002). "Given the narrow view of what constitutes an adverse employment action," the Fifth Circuit has held that "mere accusations or criticism," "investigations," and "false accusations" are "*not* adverse employment actions[.]" *Breaux*, 205 F.3d at 157–58 (collecting cases) (cleaned up). However, "transfers can constitute adverse employment actions if they are sufficiently punitive," "if the new job is markedly less prestigious and less interesting than the old one," or if the new job offers less room for advancement. *See id.* at 157; *see also Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). Nonetheless, "a plaintiff's subjective perception that a demotion has occurred is not enough" to establish an adverse employment action. *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769, 774 (5th Cir. 1996).

Here, Plaintiff failed to plead facts demonstrating that she suffered an "adverse employment action."[1] Plaintiff alleges that during FWISD's investigation, she was temporarily reassigned to the Department of Performance Management and School Choice in the District Central Office. ECF No. 20 at 5–6. After the investigation, the District notified

---

[1] Plaintiff's Count I alleges First Amendment Retaliation against Defendants Kusher and Licata in their individual and official capacities. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal quotation marks and citations omitted). Accordingly, Plaintiff's First Amendment claim against Kushner and Licata in their official capacities is properly treated as a claim against FWISD.

Alzubi that the allegations regarding her inappropriate behavior were unsubstantiated, and she was being assigned the new, arguably less stressful, position of Principal Program Administrator ("PPA"). ECF No. 20 at 8.

After the close of the investigation, Defendant Licata publicly lauded Alzubi and announced her promotion, stating to FWISD families and staff: "Fort Worth ISD fully supports Ms. Alzubi as a valued member of the Fort Worth ISD leadership team. Consistent with that support, Ms. Alzubi has been promoted to a district level administrator position." ECF No. 23-11.[2] The PPA position was not only a promotion in title, but came with a pay raise. ECF No. 23-13. While Alzubi asserts that the PPA position consists of "training and paperwork," and that she would be "tasked with supporting school-level principals in carrying out their school-level responsibilities instead of leading a school herself," ECF No. 31 at 11–12, Alzubi's "subjective perception that a demotion" occurred is not enough to establish an adverse employment action. *See Forsyth*, 91 F.3d at 774.

This Court must adhere to the "narrow view" of what constitutes an adverse employment action. *Breaux*, 205 F.3d at 157–58. Taking the allegations in the Amended Complaint as true, Alzubi was re-assigned pending an investigation, informed the allegations against her were unsubstantiated, and then promoted to a higher-paying position. ECF No. 20 at 6, 8. Investigations alone do not constitute adverse employment actions. *Breaux*, 205 F.3d at 157. Nor has Alzubi pled facts sufficient to show that her transfer to the role of PPA was "sufficiently

[2] In their briefing on Defendants' Motions to Dismiss, the parties cite to documents filed by Alzubi as part of Plaintiff's Amended Motion for Preliminary Injunction (ECF No. 23). *See, e.g.,* FWISD's Motion to Dismiss (ECF No. 27 at 2, citing to ECF No. 23-11); Individuals' Motion to Dismiss (ECF No. 34 at 2, citing to ECF No. 23-11); Plaintiff's Response to FWISD's Motion to Dismiss (ECF No. 31 at 7, citing to ECF No. 23-13); Plaintiff's Response to Individuals' Motion to Dismiss (ECF No. 36 at 8, citing to ECF Nos. 23-4, 23-12). Alzubi's Amended Complaint specifically relies on facts arising out of emails and documents dated May 26, 2026, July 8, 2026, and July 15, 2026. ECF No. 20 at 6, 8. Because such documents are "incorporated into the complaint by reference" and contained within the record of the case, the Court may properly consider them when ruling on the Motions to Dismiss. *See Randall D. Wolcott M.D., P.A.*, 635 F.3d at 763; *Meyers*, 540 F. App'x at 409.

punitive" by being "markedly less prestigious and less interesting" than the role of Principal. *Id.* The fact that the PPA role was newly created does not lend credence to Alzubi's argument that the role was a "demotion." The role carried the significant responsibility of training and evaluating incoming principals and consisted of genuine job duties. *See* ECF No. 31 at 9–10.

A reasonable employee would likely consider an administrative leadership position with higher pay to be a promotion. Alzubi's subjective preferences cannot transform her promotion into a demotion. Accordingly, Alzubi has not pled facts sufficient to allege an "adverse employment action," and as a result has not stated a plausible claim for First Amendment retaliation.

Even if Plaintiff had pled an adverse employment action, she has not alleged facts to establish that her speech outweighs FWISD's interest in the efficient provision of public services or that her speech motivated FWISD's actions.[3] Rather, Plaintiff alleges that Kushner and Licata made the decision to assign Alzubi the PPA role on the "anticipation of disruptions and threats to WHHS operations." ECF No. 20 at 9. FWISD has an interest in promoting on-campus safety and order. *See Smith v. Tarrant Cnty. Coll. Dist.*, 694 F. Supp. 2d 610, 633 (N.D. Tex. 2010) ("Maintaining student safety and order on campus to facilitate the school's educational efforts is a significant interest."). Plaintiff has not

---

[3] The speech at issue involved matters of public concern. *See Lowery v. Mills*, 157 F.4th 729, 743 (5th Cir. 2025); *Phillips v. City of Dallas*, 781 F.3d 772, 778 (5th Cir. 2015) ("Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.") (quotation omitted); *see also DeAngelis v. Protective Parents Coal.*, 556 S.W.3d 836, 851 (Tex. App.—Fort Worth 2018, no pet.), *overruled on other grounds by Montoya Frazier v. Maxwell*, 734 S.W.3d 1 (Tex. App. 2025—Fort Worth, pet denied) (en banc) (communications related to the judicial branch are matters of public concern under the First Amendment) (Pittman, J.).

.

shown that her interest in posting on social media outweighs FWISD's interest in the efficient, orderly, and safe provision of its public services.

Moreover, Plaintiff alleges that it was not her *speech* – but rather the potential for disruption to WHHS operations – that was the impetus for Defendants Kushner and Licata's decision to reassign Alzubi. ECF No. 20 at 8-9. In fact, the District was aware of Plaintiff's speech when it initially hired her as Principal. ECF No. 20 at 5. Plaintiff's speech was not the "but for" cause of *any* action, much less an adverse employment action. *See Moore v. Huse*, 578 F. App'x 334, 339 (5th Cir. 2014). Accordingly, Plaintiff has not pled facts establishing that her speech motivated Defendants' actions.

Because Alzubi has not pled facts demonstrating an adverse employment action, that her interest in speech outweighs FWISD's interest in rendering efficient public services, or that her speech motivated FWISD's actions, she has not stated a claim for First Amendment retaliation. Therefore, Alzubi's claim for First Amendment retaliation cannot survive a Motion to Dismiss.

### B. Plaintiff Fails to State a Plausible Claim for Relief Under the Fourteenth Amendment

To state an Equal Protection claim, Plaintiff must allege that (1) she received treatment different from that received by similarly situated individuals and (2) the unequal treatment stemmed from a discriminatory intent. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). The "Fifth Circuit defines 'similarly situated' narrowly." *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 735 (S.D. Tex. 2014) (citation omitted). "Similarly situated" means "in all relevant respects alike." *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021). To establish discriminatory intent, Plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Fennell*, 804 F.3d at 412 (quotation omitted). Conclusory allegations of discriminatory intent, without reference to specific facts, will not suffice. *Id.*

*First*, Plaintiff has not pled specific facts showing that she received different treatment from similarly situated individuals. Plaintiff's Amended Complaint contains the bare bones allegations that:

> 55. Defendants Licata and Kushner treated Plaintiff differently than its similarly situated employees when it singled her out for views she had expressed on her personal social media that were similar to those of her colleagues.
>
> 56. Defendants Licata and Kushner did not investigate and reassign Plaintiff's colleagues despite the fact that they were known to have participated in similar conduct by posting online about issues like BLM, DACA, and COVID-19.

ECF No. 20 at 14.

Taking these pleadings as true, Plaintiff has not pled sufficient facts to show that individuals similarly situated "in all relevant respects" were treated differently than her. *See Washington v. Nat'l Oilwell Varco, L.P.*, 634 F. Supp. 3d 316, 322 (N.D. Tex. 2022) (Plaintiff alleged no employees were "nearly identical" to her because they held different positions, worked in different departments, and reported to different supervisors) (Pittman, J.); *Red Rover Grp., L.L.C. v. City of Bossier City*, No. 25-30639, 2026 WL 1669342, at *1 (5th Cir. June 9, 2026) (Plaintiff failed to provide appropriate comparator by merely alleging that entertainment district across town received no citations for violating noise ordinances where Plaintiff did not allege that such comparator received a single noise complaint); *Bowlby v. City of Aberdeen, Miss.,* 681 F.3d 215, 227 (5th Cir. 2012) (white business owner failed to plead facts establishing black business owners were treated differently where complaint alleged no facts "regarding the types of businesses owned by black individuals, the size of their businesses, where they are located, or what laws and regulations they have violated.").

Here, Plaintiff has not pled that her colleagues held the same position as her, worked in the same department as her, or had the same supervisor as her. She has not pled that any of her colleagues ever received online backlash for their social media posts, which is what prompted the investigation in the first place. Indeed, Alzubi's Amended

Complaint is devoid of any facts suggesting that her allegedly differently treated colleagues were "nearly identical" to her. *See Washington*, 634 F. Supp. 3d at 322.

Plaintiff agrees that "[p]urely conclusory statements that 'other similarly situated individuals' were treated differently, without any factual support, are insufficient for a plaintiff to survive a motion to dismiss." ECF No. 31 at 17. Nonetheless, Plaintiff pleads just that: a conclusory statement that some of Plaintiff's colleagues were treated differently. Accordingly, Plaintiff has not pled facts sufficient to show that similarly situated individuals were treated differently than her.

*Second*, Plaintiff has not adequately alleged facts showing that Defendants' actions were taken with discriminatory intent. Conclusory allegations of discriminatory intent, "without reference to specific facts, will not suffice." *Fennell*, 804 F.3d at 412 (quotation omitted). A plaintiff's subjective belief that she was discriminated against, without more, will not carry the day on a 12(b)(6) motion to dismiss. *See Torres v. City of San Antonio*, No. SA:14-CV-555-DAE, 2015 WL 4164776, at *6 (W.D. Tex. July 9, 2015) ("Because a plaintiff's subjective belief that she was discriminated against on the basis of race is insufficient to provide a basis for relief . . . Plaintiff has failed to state a claim under the Equal Protection Clause.") (citation omitted).

Here, Plaintiff alleges Defendants Licata and Kushner's conduct was motivated, at least in part, by her Muslim Palestinian identity rather than solely by concerns about that content of her social media posts. ECF No. 20 at 14. This may be sufficient if Plaintiff had pled specific facts to support her allegations. But as support Plaintiff only alleges that the "announcement of Plaintiff's promotion followed immediately by her reassignment triggered by an online campaign targeting her religion and national origin — is itself probative of discriminatory intent." ECF No. 20 at 14. Though Plaintiff has alleged that "internet trolls" uncovered photos from Alzubi's past illustrating her political views on Palestine, ECF No. 20 at 5, her allegations that Defendants Licata and Kushner then investigated her social media and reassigned her position do not arise to the level of "discriminatory intent" on their part. Rather, Plaintiff admits that Defendants' actions were motivated by the potential for disruptions and threats to WHHS operations. ECF

No. 20 at 8–9. These allegations are not sufficient to establish that Defendants Licata and Kushner acted with "discriminatory intent."

While Alzubi may have a genuine belief that she was discriminated against on account of her Palestinian Muslim identity, she has pled nothing more than broad, conclusory facts that Defendants' actions were motivated by her religion and national origin. Such allegations are insufficient to establish Defendants' discriminatory intent. Accordingly, Plaintiff has failed to state a claim for relief against Defendants for violation of the Fourteenth Amendment's Equal Protection Clause.

### C. Plaintiff Has Failed to Allege Liability Under *Monell*

To hold a public entity liable under Section 1983, a plaintiff must show that "the [public entity] *itself*" caused the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). To state a *Monell* claim, a plaintiff must plead: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Thompson ex rel. Neveah T. v. Martinez*, 789 F. Supp. 3d 491, 529 (W.D. Tex. 2025) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2020)).

With respect to liability against public school districts, Section 1983 "does not impose liability on school districts for an employee's tort under a *respondeat superior* liability theory–but only for 'their *own* illegal acts.'" *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020) (citing *Bd of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)). To "prevail against a public school district, a plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury." *Id.* at 366. In other words, a plaintiff must demonstrate that the policy was implemented with "'deliberate indifference' to the 'known or obvious consequences' that constitutional violations would result." *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (quoting *Bd of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)). To base deliberate indifference on a single incident, "'it should have been apparent to the policymaker that a

constitutional violation was the highly predictable consequence of a particular policy.'" *Id.* (quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003)). If no constitutional violation occurred, the plaintiff's *Monell* claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Because Plaintiff has not adequately alleged a constitutional violation under Counts I and II, her claims against FWISD and Defendants Licata and Kushner in their official capacities, treated as a claim against FWISD, necessarily fail. *See Monell*, 436 U.S. at 694–95.

Nonetheless, Plaintiff's claims suffer another fatal flaw under *Monell*: She has not identified an official custom or policy that was the "moving force" behind the alleged constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Plaintiff's Amended Complaint is devoid of allegations of *any* Board custom or policy that motivated a constitutional violation. At most, the Amended Complaint alleges that Alzubi was reassigned positions pursuant to investigations into whether her social media posts comply with the District's social media policy. ECF No. 20 at 6.

For the first time in her Response, Alzubi points to a District policy ("DK-Local"), which states:

> All personnel are employed subject to assignment and reassignment by the Superintendent or designee when the Superintendent determines that the assignment or reassignment is in the best interest of the District. Reassignment shall be defined as a transfer to another position, department, or facility that does not necessitate a change in the employment contract of a contract employee. Any change in an employee's contract shall be accordance with policy.

ECF No. 31 at 7.[4]

[4] For purposes of ruling on the Motions, the Court assumes, in the light most favorable to the Plaintiff, that DK-Local grants the Superintendent the authority to reassign school district employees, though FWISD asserts that the Superintendent's authority to assign and reassign school district employees originates in statute and not in District Policy. ECF No. 33 at 2.

Such a policy cannot be construed as the "moving force" behind an alleged constitutional violation. *Piotrowski*, 237 F.3d at 578. The policy merely allows employees to be reassigned "in the best interests of the District." Plaintiff asserts that Defendant Licata reassigned her to a new position pursuant to this policy. ECF No. 31 at 8. Given its discretionary nature, Alzubi argues that the policy carries an "obvious risk that constitutional violations would follow." ECF No. 31 at 8. But Plaintiff does not support this argument with any factual allegations in the Amended Complaint. Plaintiff still has not alleged any facts, beyond mere conclusory statements, that that DK-Local was *enacted* with "deliberate indifference" to the "known or obvious consequences" that constitutional violations would result. *Alvarez*, 904 F.3d at 390.

Moreover, Plaintiff does not allege a single other incident of unconstitutional conduct arising out of the District's policy. To establish *Monell* liability then, Plaintiff must plead facts showing that it was "apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy." *Id.* Plaintiff does nothing more than point to a policy that allows for the Superintendent to reassign personnel if it is in the "best interest of the District." ECF No. 31 at 7. Plaintiff has not alleged specific facts indicating that it was apparent to any policymaker that DK-Local would result in a constitutional violation. *See Alvarez*, 904 F.3d at 390. Accordingly, Plaintiff has not pled facts sufficient to allege *Monell* liability against FWISD.

For these reasons, Plaintiff's claim for First Amendment Retaliation against Defendants Kushner and Licata in their official capacities is **DISMISSED with PREJUDICE.** In addition, Plaintiff's claim for violation of the Equal Protection Clause of the Fourteenth Amendment against FWISD, and Defendants Kushner and Licata in their official capacities, is **DISMISSED with PREJUDICE.**

### D. Defendants Licata and Kushner are Entitled to Qualified Immunity in Their Individual Capacities

The defense of qualified immunity applies to suits against defendants in their individual capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). The Court must answer two prongs affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged constitute a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* at 232. When confronted with a qualified immunity defense at the pleadings stage, the plaintiff carries the burden to identify facts which, if proven, defeats the claim of immunity. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted).

Here, Alzubi has sued Defendants Kushner and Licata in their individual capacities in addition to their official capacities. Defendants Kushner and Licata assert that they are entitled to qualified immunity on the individual capacity claims. ECF No. 34 at 10–11. The Court agrees.

To defeat qualified immunity, Alzubi must identify facts showing that Defendants Licata and Kushner violated her constitutional rights. *See Waller*, 922 F.3d at 599. As the Court has explained above, Alzubi's complaint has not pled facts sufficient to allege a violation of her First Amendment or Fourteenth Amendment rights. *See* Parts A and B. For this reason, Alzubi cannot overcome Defendants Kushner and Licata's claim to qualified immunity on the individual capacity claims.

For this reason, Plaintiff's claim for First Amendment Retaliation against Defendants Kushner and Licata in their individual capacities is **DISMISSED with PREJUDICE.** Plaintiff's claim for violation of the Equal Protection Clause of the Fourteenth Amendment against Defendant Kushner and Licata in their individual capacities is also **DISMISSED with PREJUDICE.**

## CONCLUSION

This Court is guided by the familiar maxim that "federal courts should be extremely hesitant 'to invade and take over' in the area of education[.]" *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999) (quoting *Dorsett v. Bd. of Trustees for State Colleges & Univs.*, 940 F.2d 121, 123–24 (5th Cir. 1991).[5] Actions regarding "'teaching assignments, pay increases, administrative matters, and departmental procedures,' while extremely important to the person who has dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (quoting *Dorsett*, 940 F.2d at 123). As Judge Mahon, writing for this Court twenty-five years ago stated:

> "The Federal Court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error…."

---

[5] Despite the temptation to do so, the last thing our Republic needs is an unelected lawyer in a black robe interfering without cause in basic personnel decisions by our local school districts. *See, e.g.,* THE FEDERALIST NO. 45 (James Madison) (Clinton Rossiter ed., 1961) ("The powers delegated by the Constitution to the Federal Government are few and defined [and should be] ... exercised principally on external objects such as war, peace, negotiation, and foreign commerce.") (emphasis added); Letter from Thomas Jefferson to Thomas Cooper (Nov. 29, 1802), available at National Archives, https://founders.archives.gov/documents/Jefferson/01-39-02-0070 ("The path we have to pursue is so quiet that we have nothing scarcely to propose [to Congress]. A noiseless course, not meddling with the affairs of others, unattractive of notice, is a mark that society is going on in happiness."); Hon. James C. Ho, Not Enough Respect for the Judiciary—Or Too Much? Arrogance and the Myth of Judicial Supremacy, 24 *Harv. J. L. Pub. Pol'y Per Curiam*, 6 (2026) ("There's a reason why there are jokes about God wishing that he was a federal district judge . . . [I]t's vital that district judges exercise their powers carefully and with integrity.").

*Richards v. City of Weatherford*, 145 F. Supp. 2d 786, 791 (N.D. Tex. 2001), *aff'd*, 275 F.3d 46 (5th Cir. 2001).[6]

The facts alleged by Ms. Alzubi, while perhaps indicative of personal trials Alzubi has faced in her career as an educator, do not rise to the level of a constitutional deprivation. Federal courts are not the appropriate forum for school administration. Alzubi has not pled facts sufficient to survive a 12(b)(6) motion to dismiss.

For the above reasons, the Court **GRANTS** the Motions to Dismiss. The case is hereby dismissed with prejudice.[7]

**SO ORDERED** on this **27th day of August 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

[6] The Court is well-aware that *Richards* involved a disgruntled employee's argument that he had been denied his rights under the Fourteenth Amendment for deprivations of life, liberty or property interests in his employment without due process of law. Judge Mahon's general observation on the nature of the employee/employer relationship in public entities is perfectly applicable here.

[7] If a court determines that dismissal of a claim is appropriate, it should be with prejudice if amending the claim would be futile or "the plaintiff has alleged his best case." *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999); *see Schiller v. Physicians Res. Group, Inc.,* 342 F.3d 563, 566 (5th Cir.2003). Plaintiff has already amended her complaint once. ECF No. 20. The Court concludes Plaintiff has alleged her best case.